UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAURICE A. PETTWAY,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY OF VINELAND; DETECTIVE GAMALIEL "GAMI" CRUZ; POLICE CHIEF TIMOTHY CODISPOTI; OFFICER ROBERT MAGEE; OFFICER CHARLES MACKAFFEE; OFFICER VICTOR RIZZO; OFFICER ROBERT DIMARCHI; OFFICER FELIPE LABOY; JOHN DOES 1-10; AND JANE DOES 1-10,<br><br>        Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 13-470<br>(JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

BEGELMAN ORLOW & MELLETZ
By: Paul R. Melletz, Esq.
411 Route 70 East, Suite 245
Cherry Hill, New Jersey, 08034
    Former Counsel for Plaintiffs

BARRETT AND PAVLUK, LLC
By: Judson B. Barret, Esq.
1200 Eagle Avenue, Suite 204
Ocean, New Jersey 07712
    Counsel for Defendants City of Vineland & Police Chief
    Timothy Codispoti

THE MACMAIN LAW GROUP, LLC
By: Brian H. Leinhauser, Esq.
    Charles R. Starnes, Esq.
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
    Counsel for Defendants Gamaliel "Gami" Cruz, Charles
Mackafee, Victor Rizzo, Robert DiMarchi, and Felipe Laboy

1

LAW OFFICE OF WILLIAM P. FLAHIVE
By:  William P. Flahive, Esq.
Diamond Silver Office Complex
24 Arnet Avenue, Suite 103
Lambertville, NJ 08530
     Counsel for Robert Magee


**IRENAS**, Senior District Judge:

     Plaintiff Maurice Pettway brought this civil rights action
against the City of Vineland, Vineland's Police Chief, and
individual police officers based on an allegedly malicious
prosecution of Plaintiff.

     Currently pending before the Court are three separate
motions for summary judgment filed by Defendants.[1]  In addition,
Defendants Cruz, Mackafee, Rizzo, DiMarchi, and Laboy have moved
for sanctions under Rule 11 against Plaintiff and Plaintiff's
former counsel, Paul Melletz, Esq. of Begelman Orlow & Melletz.

     For the reasons explained herein, Defendants' motions for
summary judgment will be **GRANTED**.  The motion for sanctions will
be **GRANTED** as to Plaintiff, but **DENIED** as to Mr. Melletz.


## I.   FACTS

     The Court recites those facts relevant to the pending
motions.[2]

---

[1] The City of Vineland and Police Chief Codispoti filed one motion, Officer
Magee his own motion, and the remaining officers a third motion.
[2] Plaintiff, who has proceeded pro se since June 5, 2014, has not filed any
opposition to Defendants' motions.  Plaintiff's former counsel, Paul Melletz,
Esq., has filed a responsive statement of facts as it applies to the pending

On August 5, 2010, a confidential informant called Defendant Detective Gamliel Cruz at the Vineland Police Department with a tip that a black male subject would be driving a gold-colored Lincoln LS with NJ tags ZMH10V that day, and that this individual would be in possession of a firearm or cocaine hidden in the car.  (Defs. Cruz, et al.'s Statement of Relevant Undisputed Facts ("D.S.F.") at ¶ 1)[3]  The informant also stated that this individual would be wearing khaki shorts and a grey and white striped shirt, and that the car would be parked in front of 119 W. Grape St. in the City of Vineland.  (Id.) Defendant Officer Robert Magee claims he overheard the conversation and said that he would respond to the area.  (Magee Police Rpt. at 1, Ex. 3 to Defs. Cruz, et al.'s Motion)

At the Grape St. address, Defendant Magee found the Lincoln and observed a man, who matched the informant's description, and a woman, who Magee recognized from prior narcotics investigations as Erica Santiago, enter the Lincoln.  (Id.) Magee followed the vehicle and decided to conduct a motor vehicle stop.  (Id.)  After asking the driver for his license

---

motion for sanctions.  To the extent Mr. Melletz's submission does not challenge Defendants' statement of material facts not in dispute, the Court deems Defendants' statement of facts undisputed with regards to the instant summary judgment motions.
[3] Although they filed separate motions for summary judgment, Defendants Magee, Codispoti, and City of Vineland have adopted the facts set forth in their co-Defendants' motion.

and registration, Magee identified the man as Maurice Pettway. (Id. at 2)

Defendant Officer Felipe Laboy, who assisted in the motor vehicle stop, informed Magee that Santiago had an outstanding warrant for her arrest.[4]  (Id.)  As Magee placed Santiago under arrest, K9 Officer Charles Mackafee, whom Magee had also called to the scene, arrived with his K9 partner.  (Id.)  The ensuing dog-sniff indicated an odor of narcotics coming from the vehicle's driver-side front door.  (Id. at 5-6)  Plaintiff refused to consent to a search of the car and the officers sent for a tow truck.  (D.S.F. ¶ 7)  The officers impounded the vehicle and transported both Plaintiff and Santiago to the Vineland Police Department.  (Id. ¶¶ 7-8)  At some point Magee learned that there was a Pennsylvania detainer warrant out on Plaintiff and that Plaintiff had four prior felony convictions. (Id. ¶¶ 8, 16; M. Pettway NJ Criminal History Rpt., Ex 12 to Defs. Cruz, et al.'s Motion)  After arriving at the police station, Santiago paid the amount outstanding on her warrant and was released.  (Id.)  Plaintiff was processed and transported to the Cumberland County Jail.  (Magee Police Rpt. at 2)

---

[4] Magee's report does not detail the basis for the arrest warrant.  It states only that "Santiago had an outstanding warrant out of Franklin Twp (warrant number #SP4324683) for the amount of $39."  (Magee Rpt. at 2)

On August 6, 2010, Magee applied for, and was granted, a search warrant for the car Plaintiff had been driving. (Magee Aff. in Support of Search Warrant for Pl.'s Vehicle at 4, Ex. 1 to Defs. Cruz, et al.'s Motion)  Magee, along with Defendant Officers DiMarchi and Rizzo, executed the search warrant that same day. (D.S.F. ¶ 10)  In the car's glove box, they discovered a hidden compartment behind the dashboard that contained a black handgun and loaded magazine. (Id.)  On the floor of the vehicle, the officers found a marijuana grinder and scale concealed in a fake energy drink can. (Id. ¶ 11)  Last, they found numerous blue wax bags in the trunk of the car. (Id. ¶ 12)  The officers ran the gun's serial number through the National Crime Information Center and found out that the gun had been reported as stolen. (Magee Police Rpt. at 2)  Magee then contacted the Vineland Municipal Court Clerk and asked her to authorize warrants for Plaintiff for the following charges: (1) unlawful possession of a weapon, (2) possession of a weapon by a convicted felon, and (3) receiving stolen property. (Id.)  Magee also sought a summons for Plaintiff for possession of drug paraphernalia. (Id.)  Ms. Santiago was charged with receiving stolen property, unlawful possession of a weapon, and possession of drug paraphernalia. (D.S.F. ¶ 18)

Although the circumstances are not entirely clear from the parties' submissions, it appears that Plaintiff's criminal

5

charges were terminated in Plaintiff's favor some time before June 2012, when Plaintiff retained Mr. Melletz as counsel.[5]  On January 24, 2013, Plaintiff filed the instant suit asserting claims for malicious prosecution and conspiracy to violate his civil rights against Defendants Magee, Cruz, Mackafee, Rizzo, DiMarchi, and Laboy (collectively, "Officer Defendants"), and municipal liability claims against Defendant Police Chief Codispoti and the City of Vineland (collectively, "Municipal Defendants").[6]  The Complaint alleges that the officers fabricated evidence in order to institute false charges against Plaintiff without probable cause.  (Compl. ¶¶ 38-40)

Mr. Melletz obtained copies of Officer Defendants' police reports on May 24, 2013.  On October 15, 2013, Defense counsel sent Mr. Melletz a letter stating that Plaintiff's case was without merit and informing Mr. Melletz that Defendants would seek fees and costs under Rule 11 if Plaintiff did not promptly dismiss the case.  (10/15/2013 Ltr., Ex. 19 to Defs. Cruz, et al.'s Motion)  Mr. Melletz responded that he and Plaintiff

---

[5] Based on prior submissions in the record, its seems that Mr. Pettway's criminal case was one of many the Cumberland County Prosecutor dismissed with prejudice following revelations regarding Defendant Cruz's behavior in an unrelated case.  In their motions for summary judgment, Defendant Officers do not argue that Plaintiff's criminal proceedings did not end in Plaintiff's favor (an element of the malicious prosecution claim).
[6] The Complaint did not challenge the original traffic stop, Plaintiff's initial detention, or the vehicle search.  In May 2014, Plaintiff made a motion to amend the Complaint to include an unlawful seizure claim.  (Docket No. 48)  The Court denied the motion without prejudice.  (Docket No. 55)

believed there to be a reasonable basis for the suit and would
not drop the case.  (11/6/2013 Ltr., Ex. 20 to Defs. Cruz, et
al.'s Motion)  Defendants then filed their first motion for Rule
11 sanctions on January 7, 2014, which the Court dismissed
without prejudice.[7]  (Order Dismissing Without Prejudice Motions
for Sanctions, Docket No. 39)  Plaintiff's opposition to that
motion, submitted on February 4, 2014, included a statement of
facts signed by Mr. Melletz and a Certification from Plaintiff
stating that the police had planted the gun in the car.

On April 2, 2014, Mr. Melletz received new evidence from
Defense counsel that caused him to doubt his client's
truthfulness.  (Melletz Counter Statement of Material Facts
("M.C.S.F.") at ¶ 17)  Apparently, in the weeks following his
initial detention, Plaintiff made a number of phone calls from
prison to Ms. Santiago.  Recordings of these calls, which
Defendants obtained after subpoenaing the Cumberland County
Prosecutor's Office, show Plaintiff's concerns over both the
discovery of the gun and the charges brought against Ms.
Santiago.  (See Pettway Prison Calls, Exs. 21 & 22 to Defs. Cruz
et al.'s Motion)  On August 8, 2010, Plaintiff tells Ms.
Santiago to "get out the house" because "they found it" and
brought charges against both him and Ms. Santiago.  (Id., Call

---

[7] The Court declined to rule on the merits of the case couched within a Rule
11 motion rather than on motions for summary judgment.

No. 881V10J8.v10)  During further calls on August 8 and 9,
Plaintiff says that he will take all the charges and agrees to
write an affidavit "so [Santiago] cannot be charged."  (Id.,
Call Nos. 881V10JC.v10, 891S1003.v10)  He says that someone must
have snitched on him.  (Id., Call No. 881S101D.v10)  When Ms.
Santiago asks who knew that he "carr[ied] that there," Plaintiff
explains that he "got that from Mike . . . . He gave me that
gun."  (Id.)  At one point, acknowledging that the calls were
being recorded, Plaintiff says: "I know they listening.  That
was my gun.  Period."  (Id., Call No. 891U10Z4.v10)

   After receiving the recordings, Mr. Melletz informed the
Court that this new evidence placed his office into an
"unresolvable conflict" (4/28/2014 Ltr., Docket No. 41), and
subsequently filed a motion to withdraw from the case, which the
Court granted on June 5, 2014 (Order Granting Motion to
Withdraw, Docket No. 56).

   Municipal Defendants filed their motion for summary
judgment on January 8, 2015, and Officer Defendants followed
with their own motions for summary judgment on January 9, 2015.
Defendants Cruz, Mackafee, Rizzo, DiMarchi, and Laboy also moved
for sanctions pursuant to Rule 11.  Despite being given
additional time to file a response,[8] Plaintiff has not submitted

_____

[8] The Court granted Plaintiff's pro se letter request for time to file an
opposition.  (Docket No. 85)

any opposition to Defendants' motions.  Mr. Melletz filed a
separate opposition to the motion for sanctions.  (Melletz Opp.,
Docket No. 77)

## II.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary
judgment should be granted if "pleadings, depositions, answers
to interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  *See also Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for
summary judgment, the court must construe all facts and
inferences in the light most favorable to the nonmoving party.
*See Boyle v. Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).
The moving party bears the burden of establishing that no
genuine issue of material fact remains*.  See Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material only
if it will affect the outcome of a lawsuit under the applicable
law, and a dispute of a material fact is genuine if the evidence
is such that a reasonable fact finder could return a verdict for
the nonmoving party.  *See Anderson*, 477 U.S. at 252.

The nonmoving party must present "more than a scintilla of
evidence showing that there is a genuine issue for trial."

9

*Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Anderson*, 477 U.S. at 249.

Courts may not automatically grant a motion for summary judgment when the opposing party fails to respond. *See Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) ("Even though Rule 56(e) requires a non-moving party to 'set forth specific facts showing that there is a genuine issue for trial,' it is 'well-settled . . . that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond.'") (quoting *Jaroma v. Massey*, 873 F.2d 17, 19-20 (1st Cir. 1989). "The Court must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is 'appropriate.'" *Muskett v. Certegy Check Servs., Inc.*, No. 08-3975 (JBS/JS), 2010 WL 2710555, at *3 (D.N.J. July 6, 2010). Where, as here, "the moving party does not have the burden of proof on the relevant issues, . . . the district court

must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law." *Anchorage Assocs.*, 922 F.2d at 175.

### III. Analysis

The Court will first address Defendants' motions for summary judgment on Plaintiff's claims before turning to the Rule 11 motion for sanctions.

#### A. Plaintiff's Claims

#### 1. Malicious Prosecution

Counts I and II of the Complaint assert malicious prosecution claims against Officer Defendants under § 1983 and New Jersey State law.  Plaintiff alleges that Defendant Cruz filed false charges against Plaintiff without probable cause, that Defendant Magee filed false reports and fabricated evidence on which county prosecutors relied, and that the remaining Officer Defendants knew the charges were false but failed to disclose that fact.  (Compl. ¶¶ 38-41)  Since Plaintiff has failed to present any evidence to support these allegations, and Plaintiff's own statements contradict the them, the Court will grant Officer Defendants' motions for summary judgment on the malicious prosecution claims.

11

The Third Circuit requires a plaintiff to prove the following in order to prevail in a § 1983 malicious prosecution action:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in the plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). The standard for malicious prosecution under New Jersey State law mirrors these elements, excepting the fifth requirement.[9] Here, Plaintiff has not provided sufficient evidence to show that Officer Defendants lacked probable cause.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo,* 212 F.3d 781, 789 (3d Cir. 2000).[10]  In the context of malicious prosecution claims,

---

[9] Specifically, "[a] civil action based upon the malicious prosecution of a criminal complaint may be sustained only with proof (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." *Epperson v. Wal-Mart Stores, Inc.,* 373 N.J. Super. 522, 530 (App. Div. 2004) (internal quotations omitted)
[10] Similarly, New Jersey courts have defined probable cause as "facts such as to lead a person of ordinary prudence to believe on reasonable grounds the

courts must examine each offense charged for probable cause. *See Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) ("[A] defendant initiating criminal proceedings on multiple charges is not necessarily insulated in a malicious prosecution case merely because the prosecution of one of the charges is justified.").

Plaintiff faced charges for unlawful possession of a weapon, possession of a weapon by a convicted felon, possession of drug paraphernalia, and receiving stolen property. Officer Defendants argue that they had clear probable cause to bring each of these charges. Upon executing a search warrant of the vehicle Plaintiff had been driving, the officers found a stolen handgun and loaded magazine hidden in the glove compartment. They also found two marijuana grinders and numerous small plastic baggies. Finally, Plaintiff's criminal history includes felony convictions. Based on these facts and circumstances, a reasonable officer in Officer Defendants' position would believe that Plaintiff had committed each of the charged offenses.

As mentioned above, Plaintiff has not filed any opposition to the instant motions. The Complaint indicates Plaintiff's belief, in contradiction with Defendants' statement of facts, that Defendant Officers "planted" the gun and drug-related evidence in the car and therefore had no legitimate probable

---

truth of the charge at the time it was made." *Brunson v. Affinity Fed. Credit,* 199 N.J. 381, 398 (2009).

cause to charge Plaintiff based on such evidence.  However, considering Plaintiff's own admissions in the prison calls made to Ms. Santiago, the Court finds no genuine dispute of fact here.

Plaintiff states quite clearly during his conversations with Ms. Santiago that the gun belonged to him.[11]  The recordings eliminate any dispute of fact as to whether Defendants planted the evidence that gave the officers probable cause to bring the relevant charges.  It being undisputed that the officers found a firearm, ammunition, and drug paraphernalia in a vehicle driven by a convicted felon, no reasonable jury could determine that Defendant Officers lacked probable cause to bring the relevant charges against Plaintiff.  Plaintiff's § 1983 and New Jersey State law malicious prosecution claims must therefore fail.

### 2. Civil Rights Conspiracy

To prove a civil rights conspiracy claim, Plaintiff must show that he suffered an actual deprivation of his constitutional rights.  *See Ridgewood Bd. Of Educ. V. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must

---

[11] While Plaintiff also acknowledges the fact that the calls were recorded and emphasizes for those listening that the gun was his and not Ms. Santiago's, the Court does not take such statements as merely evidence of Plaintiff's chivalrous attempt to direct blame away from Ms. Santiago.  Plaintiff makes direct admissions that he obtained the gun from an individual named Mike and that someone must have "snitched" to the police about the gun.

14

prove that persons acting under color of state law conspired to deprive him of a federally protected right."); *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 385 (D.N.J. 1998) ("[A] § 1983 conspiracy claim is not actionable without an actual violation of § 1983."). Here, Plaintiff's conspiracy claim relies on his underlying malicious prosecution claim. Since the Court holds that Plaintiff cannot prove his malicious prosecution claim, the conspiracy claim must fail as well.

### 3. Municipal Liability

In Counts IV and V of the Complaint, Plaintiff asserts § 1983 supervisory and municipal liability claims against Police Chief Timothy Codispoti and the City of Vineland for policies or customs responsible for the malicious prosecution Plaintiff alleges he suffered. (Compl. at 14-16)  The Court will grant Municipal Defendants summary judgment on both counts.

First, the Court notes that Plaintiff brings his claim against Defendant Codispoti in Codispoti's official capacity only. (Compl. ¶ 10)  The Supreme Court has opined that official capacity claims, as opposed to claims brought against officials in their individual capacity, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Courts should therefore treat suits against state officials in their official capacity "as suits against the State." *Id.*  "A suit

against the Chief of Police in his official capacity is really a claim against the police department and, in turn, the municipality." *Cordial v. Atlantic City*, No. 1:11-cv-01457 (RMB/AMD), 2014 WL 1095584, at *9 (D.N.J. March 19, 2014).

A municipality may be liable under § 1983 "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To succeed on a municipal liability claim, however, a plaintiff must have suffered some underlying violation of his constitutional rights for which the municipality is to blame. *See Mulholland v. Gov't County of Berks, Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Since no reasonable jury could find an underlying constitutional violation, i.e. malicious prosecution, Plaintiff's municipal liability claims must be dismissed.

## B. Rule 11 Sanctions

The Court will deny Defendants Cruz, Mackafee, Rizzo, DiMarchi, and Laboy's motion for sanctions against Plaintiff's former counsel, Paul Melletz, Esq., but will grant the motion as it applies to Plaintiff.

16

Rule 11 states, in pertinent part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11.  If a party or its counsel violates this provision, the opposing party may move for the imposition of sanctions, which may include an order directing payment to the movant of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c).

The goal of Rule 11 is the "correction of litigation abuse." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987).  "[S]anctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling.  Substantially

17

more is required." *Id.*  Generally, sanctions are warranted "only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.3d 277, 289 (3d Cir. 1991) (citing *Doering v. Union Cnty. Bd. Of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).  As indicated by the Rule, a court must look to whether an attorney's or party's representations to the court were reasonable under the circumstances. *Bus. Guides v. Chromatic Commc'ns Ent.*, 498 U.S. 533, 551 (1991).  "The wisdom of hindsight is to be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989). "When the attorney reasonably relies upon the misrepresentations of a client, the client not the attorney should be sanctioned under Rule 11." *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*, No. CIV. A. 97-7430, 1999 WL 675469, at *4 (E.D. Pa. Aug. 31, 1999).  "Counsel is permitted to assume his client is honest with him unless and until circumstantial evidence is obviously to the contrary." *Id.* at *6.

Defendants argue that Mr. Melletz continued to pursue the litigation despite being provided with evidence that his client's claims were frivolous.  Specifically, Mr. Melletz had received copies of reports authored by Officer Defendants, which

18

detail how and where the officers discovered the gun and drug paraphernalia in Plaintiff's vehicle.

Mr. Melletz denies that he knew Plaintiff's allegations – that the police had planted the gun and drug paraphernalia in the car – were false until April 2, 2014, when Defense counsel sent Mr. Melletz recordings of Plaintiff's prison calls. (Melletz Opp. at 9-10)  Up to that point, Mr. Melletz relied on his client's version of the events.  (Id.)  After listening to the recordings, on April 28, 2014, Mr. Melletz sent a letter to the Court stating that there was an "unresolvable conflict" necessitating his filing a motion to withdraw from the case. (See Docket No. 42)  Mr. Melletz filed the motion on May 7, 2014, and the Court granted the motion on June 5, 2014.  Mr. Melletz states, and the docket reflects, that he did not file any further papers with the Court between April 2, 2014, and his withdrawal from the case that could lead to Rule 11 sanctions.[12]

In support of the reasonableness of his continued belief of Plaintiff's story, Mr. Melletz argues that the police reports did not prove that Plaintiff's story was false.  Plaintiff's entire case, which centered on a malicious prosecution claim, was premised on Officer Defendants' having lied and fabricated

---

[12] Mr. Melletz did file a motion to compel discovery (Docket No. 33) and a motion to seal that docket entry (Docket No. 35) during this time period. However, Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d).

evidence in order to pursue charges against Plaintiff.  It was to be expected that the police reports would counter Plaintiff's claims.  Mr. Melletz points to inconsistencies in the police reports regarding the information provided to Officer Defendants by the confidential informant that lead to Plaintiff's initial arrest.[13]  In addition, the vehicle Plaintiff had been driving was registered to a third-party, which supported Plaintiff's contention that the items in the car did not belong to him.

The Court does not find this to be the exceptional case that warrants sanctions against Plaintiff's counsel and will deny the Rule 11 motion as it applies to Mr. Melletz.  However, Plaintiff clearly knew that Officer Defendants did not plant the gun in his vehicle, and that each of his claims, which rely the allegation that police fabricated evidence, were frivolous. Rule 11(c)(1) states that a court may impose appropriate sanctions "on any attorney, law firm, *or party* that violated [Rule 11(b)] *or is responsible for the violation*."  Fed. R. Civ. P. 11(c)(1) (emphasis added).  Here, Plaintiff is responsible for numerous submissions to the Court that contain patently

---

[13] For example, it is unclear what exactly the confidential informant said would be in Plaintiff's vehicle.  Magee's police report states that the informant claimed drugs would be in the car.  In a supplemental report, Defendant Mackafee writes that there was "reliable information that there was a handgun and illegal drugs in the vehicle."  (Mackafee Rpt., Ex. 2 to Defs. Cruz, et al.'s Motion)

false factual contentions.  The Court will therefore grant the Rule 11 motion against Plaintiff.

Defendants ask for an award of sanctions to "compensate the Officer Defendants for costs, attorney's fees, and damage to Defendants' reputations." (Defs. Cruz, et al.'s Motion at 16) However, Rule 11 sanctions are meant "to deter, not to compensate." *DiPaolo v. Moran*, 407 F.3d 140, 145 (3d Cir. 2005).  Defendants may submit an itemized petition for reasonable attorneys' fees and costs within 20 days.  After reviewing Defendants' submission, the Court will determine an appropriate award.

## IV.  Conclusion

For the reasons set forth above, the Court will grant Defendants' motions for summary judgment.  Defendants Cruz, Mackafee, Rizzo, DiMarchi, and Leboy's motion for Rule 11 sanctions will be denied as to Plaintiff's former counsel, but granted as to Plaintiff.  An appropriate Order accompanies this Opinion.


Date: May 14, 2015

                              s/ Joseph E. Irenas
                              **JOSEPH E. IRENAS, S.U.S.D.J.**


21